FILED

2017 Feb-24  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **3D-LIQ, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:16-CV-1358-VEH** |
| | ) |
| **MATTHEW WADE, in his official** | ) |
| **capacity as Sheriff of Calhoun** | ) |
| **County, Alabama; and LARRY** | ) |
| **AMERSON, individually,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

This is a civil action filed by the Plaintiff, 3D-LIQ, LLC, against Matthew

Wade, in his official capacity as the Sheriff of Calhoun County, Alabama, and against

Larry Amerson, individually. (Doc. 14).[1] All counts of the Amended Complaint arise

out of a raid of a bingo hall by the Calhoun County Sheriff's Office, and the seizure

---

[1]  The Amended Complaint actually does not name Wade, but instead names Larry
Amerson, "individually and in his official capacity as Sheriff of Calhoun County, Alabama."
(Doc. 14 at 1).  At the time of the events of this case Amerson was the Sheriff, but he no longer
is.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and this Court's Order of
October 27, 2016 (doc. 21), Wade was substituted for former Sheriff Amerson for purposes of
the official-capacity claims.  Amerson remains a Defendant in his individual capacity.

Also, when this case was  originally filed on August 19, 2016, Sable Learning Center
("Sable") was an additional Plaintiff.  (Doc. 1).  The Amended Complaint omits Sable as a
Plaintiff and contains no claims against Sable.  Sable also filed a motion to dismiss its claims
(doc. 13), which this Court granted on October 27, 2016 (doc. 21).

of the Plaintiff's property therein.

The Amended Complaint states that it "is brought pursuant to 42 U.S.C. § 1983," and "the Federal Declaratory Judgment Act." (Doc. 14 at 3). It sets out four counts. Count One is entitled "Injunctive Relief under 42 U.S.C. § 1983," although section 1983 is not mentioned in the body of the count. Count Two is entitled "Injunctive Relief," although the body of the count fails to state the basis for such relief. Count Three seeks a declaratory judgment, but, again, the body of the count does not state the legal basis for such relief. Count Four seeks "damages," presumably pursuant to section 1983, although the count does not say as much.

The case comes before the Court on the Defendant's "Motion [T]o Dismiss, or in the Alternative for Summary Judgment," filed on September 19, 2016. (Doc. 9). A hearing was held on the motion on November 17, 2016. For the reasons stated herein, the motion will be treated as a <u>motion to dismiss</u>, pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, and will be **GRANTED**. However, the Plaintiff will be given an opportunity to amend its claims against Sheriff Wade, and then only in his official capacity.

## I.    STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT

The following factual allegations appear in the Amended Complaint:

8.     Sable [Learning Center ("Sable")] is a qualified nonprofit organization and has run a center for children in Hobson City, a small town outside of Anniston, [Alabama] for over 30 years. The center provides underprivileged children with healthy meals and assists them with their schoolwork.

9.     In order to generate much needed money to continue to run the center, Sable, in accordance with Alabama law, applied for a bingo permit in the early summer of 2016. Sable sought to run a paper bingo operation on property located at 448 White Oak Drive, Glencoe, Alabama—property located in Calhoun County, Alabama but within the police jurisdiction of [the City of] Southside[, Alabama].

* * *

Sable's Application and Permit

17.     In early summer of 2016, Sable applied for a permit to operate a charitable bingo hall in Calhoun County.

18.     On June 1, 2016, the [Calhoun County Bingo Regulatory Commission (the "Commission")] approved the issuance of a bingo permit to Sable, and the Commission issued a bingo permit to Sable that day.

19.     Sable then obtained a permit from Southside on July 12, 2016.

Sable and 3D-LIQ's Relationship

20.     After obtaining the necessary permits, Sable began preparing to open the bingo hall. To that end, Sable entered into three agreements with 3D-LIQ for 3D-LIQ to lease the premises located at 448 White Oak Drive, Glencoe, Alabama to Sable and to provide equipment and certain services necessary for the charitable bingo operation.

4

21.    Sable and 3D-LIQ entered into a services agreement, under which 3D-LIQ agreed to provide all advertising, janitorial, and security services for Sable.

22.    They also entered into an exclusive equipment lease and license agreement, under which 3D-LIQ agreed to provide all point-of-sale equipment, furniture, supplies, and other bingo-related equipment to Sable.

23.    Finally, Sable and 3D-LIQ entered into a lease agreement, under which 3D-LIQ leased the premises and facility located at 448 White Oak Drive, Glencoe, Alabama to Sable.

24.    In exchange for the services, equipment, and property, Sable agreed to pay 3D-LIQ.

The Opening of Big Hit Bingo Hall & the July 22 Raid

25.    3D-LIQ spent significant time and resources preparing the property for the planned bingo operation.

26.    3D-LIQ provided all of the equipment, supplies, and furniture to Sable and otherwise helped prepare the charitable bingo operation.

27.    3D-LIQ spent thousands of dollars purchasing technological equipment (including point-of-sale machines and a security system), televisions, and furniture for the bingo hall.

28.    Sable planned to open the charitable bingo hall on July 22, 2016, and pursuant to its agreement with Sable, 3D-LIQ heavily advertised the July 22 opening.

29.    [Defendant] Amerson informed various news organizations that Sable did not have a valid bingo permit.

30.    Neither the Commission nor [the City of] Southside gave notice that the bingo permit had been declared invalid or had been revoked.

5

31.    The district attorney of Calhoun County did not file an action with the Calhoun County Circuit Court seeking to revoke the permit.

32.    No actions have been taken . . . to revoke Sable's bingo permit.

33.    But, on opening night (Friday, July 22), Amerson, under the premise that Sable's bingo permit was invalid, raided the charitable bingo operation, shut it down, and escorted out all of the charitable-bingo players.[2]

34.    In an operation that took Friday night and most of Saturday, Amerson and the Sheriff's Department seized money and other bingo-related equipment leased to Sable by 3D-LIQ.

35.    []

36.    Amerson has threatened to arrest individuals associated with 3D-LIQ for violating the Act.

37.    Amerson's unlawful raid of the charitable bingo operation has caused significant damages to 3D-LIQ.

38.    Amerson has unlawfully seized 3D-LIQ's property. Without the necessary equipment that was seized by Amerson, Sable has been unable to reopen the charitable bingo operation since the July 22 raid, and as a result, 3D-LIQ has lost, and continues to lose, revenue due to it under its agreements with Sable.

39.    Amerson's unlawful raid caused significant damage to 3D-LIQ's property. During the raid, Amerson removed and damaged personal property and equipment that was not seized.

40.    Amerson's unlawful seizure and raid has halted the generation of

_____

[2] At oral argument, the parties agreed that the Sheriff had obtained a warrant for the raid and seizure.

revenue entitled to 3D-LIQ under its agreements with Sable.

41.     Amerson's unlawful interference with the charitable bingo operation has caused irreparable harm to 3D-LIQ. Without equipment, the charitable bingo operation cannot proceed, and 3D-LIQ continues to lose revenue.

42.     Amerson has caused the charitable bingo operation to close, and Amerson continues to threaten another raid and seizure of equipment if the operation is reopened.

43.     Amerson has resorted to *in terrorem* tactics to prevent 3D-LIQ from continuing to supply equipment, services, and the property to allow for the operation of a charitable bingo operation by threatening individuals associated with 3D-LIQ with criminal prosecution should the charitable bingo operation resume.

(Doc. 14 at 3-9).

## III.   ANALYSIS

### A.   <u>Count One – 42 U.S.C. § 1983</u>

#### 1.   *Overview of the Count*

Count One states that it is brought against "Amerson." However, as noted previously[3], the reference to "Amerson," without more, can be construed to mean Wade, in his official capacity, and Amerson, in his individual capacity.  The Court so construes this Count.

"To state a claim under § 1983, a plaintiff must allege the violation of a right

---

[3] *See* note 1.

7

secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law." *W.*

*v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55, 101 L. Ed. 2d 40 (U.S. 1988)

(citations omitted).  Count One alleges that:

> 3D-LIQ has a property right to the bingo-related equipment and other
> property seized and a property interest in the revenue streams generated
> by Sable's operation of the bingo hall. . . . Amerson's interference with
> the operation of the charitable bingo operation, including the seizure of
> the bingo-related equipment, has deprived 3D-LIQ of its property rights
> and interests.
>
> * * *
>
> Amerson's threatened commencement of prosecution has deprived
> 3D-LIQ of its liberty rights.
>
> * * *
>
> Amerson's unlawful interference with the operation of a lawful
> charitable bingo operation has deprived 3D-LIQ of revenue due to it
> under its agreements with Sable.

(Doc. 14 at 10, ¶¶47-50) (emphasis added).  The Plaintiff contends that it "has not had

a chance to be heard prior to or after being deprived of these rights [and] will

continue to be deprived of its rights without a chance to be heard."  (Doc. 14 at 10,

¶¶51-52).  The Plaintiff also alleges that it is entitled to be heard . . . before Amerson

further interferes with [its] rights."  (Doc. 14 at 11, ¶56).  The Amended Complaint

argues that the absence of such a pre-deprivation procedure is a violation of the

8

Plaintiff's right to procedural due process under the Fourteenth Amendment to the United States Constitution.  (Doc. 14 at 10, ¶¶54-56).

The title of Count One states that it seeks only "Injunctive Relief under 42 U.S.C. § 1983." (Doc. 14 at 10). The Amended Complaint states that "[u]nder the Fourteenth Amendment, 3D-LIQ is entitled to be heard on why Amerson's actions are improper before Amerson further interferes with 3D-LIQ's rights." (Doc. 14 at 11, ¶56).  The Plaintiff seeks relief in the form of "[a]n appropriate hearing to protect 3D-LIQ's procedural due process rights under the Fourteenth Amendment before Amerson further interferes with its rights."  (Doc. 14 at 14).

### 2.   *The Individual Capacity Claim Against Amerson Is Due To Be Dismissed*

"The plaintiff must . . . name as a defendant the state official empowered with enforcing the disputed constitutional right or statutory provision in his official capacity." *See, Louisius v. Florida Dep't of Corr.*, No. 6:14-CV-931-ORL-40, 2015 WL 667973, at *4 (M.D. Fla. Feb. 17, 2015) (Byron, J.) (*citing Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011))*; see also*, *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("A state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit.").   Amerson is sued only in his individual capacity.  Although no party raises

9

this issue, the Court notes that since Amerson is no longer the Sheriff of Calhoun County, he lacks the official capacity to secure any of the relief sought in Count One. Accordingly, all claims against Amerson in Count One are due to be dismissed.

### 3. *The Official Capacity Claim Against Sheriff Wade*

#### a. **Sheriff Wade Is Entitled to Eleventh Amendment Immunity as to the Claim for Injunctive Relief in Count One**

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[4], or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  "[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356, 39 L. Ed. 2d 662 (1974).  The Eleventh Circuit has noted that

> [Alabama Sheriff's] are state officials for sovereign-immunity purposes. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.1990). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity ... or Congress has abrogated the state's immunity." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419,

---

[4] "A state is [also] immune from a suit for damages in federal court by one of its own citizens[.]" *Lake v. Skelton*, 840 F.3d 1334, No. 15-13124, 2016 WL 6518522, at *2 (11th Cir. Nov. 3, 2016) (*citing Hans v. Louisiana*, 134 U.S. 1, 14–17, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

1429 (11th Cir.1997) (internal citations omitted).

*Hill v. Hale*, 637 F. App'x 577, 578 (11th Cir. 2016).  Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases, and the State of Alabama has not waived its immunity.  *Carr*, 916 F.2d at 1525.

Wade does not raise Eleventh Amendment immunity in the motion to dismiss.

The Eleventh Circuit has noted that

> the jurisdictional bar embodied in the Eleventh Amendment is a "rather peculiar kind of 'jurisdictional' issue." *United States v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 892 (D.C.Cir.1999). Unlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998); *see Calderon v. Ashmus*, 523 U.S. 740, 745 n. 2, 118 S.Ct. 1694, 1697 n. 2, 140 L.Ed.2d 970 (1998) ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, ... we have recognized that it is not coextensive with the limitations on judicial power in Article III."). "Rather," the Supreme Court has explained, "the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so." *Schacht*, 524 U.S. at 389, 118 S.Ct. at 2052. This understanding of the Eleventh Amendment as a volitional defense is manifest in decisions allowing it to be waived by the state, *see, e.g., Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985), or ignored by the court if not raised, *see, e.g., Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567, n. 19, 73 L.Ed.2d 172 (1982). Thus, unlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does.

*McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001).

Be that as it may, in *McClendon*, the Eleventh Circuit also was clear that

> a state or its officials <u>cannot force a federal court to decide the merits of</u>
> <u>a claim before addressing the Eleventh Amendment issue, and we can</u>
> <u>raise an Eleventh Amendment issue on our own motion</u>. *Whiting v.*
> *Jackson State University*, 616 F.2d 116, 126 n. 8 (5th Cir.1980). Our
> holding is limited to the conclusion that the conditional assertion of the
> Eleventh Amendment gives a federal court the discretion to dispose of
> the merits favorably to the state or its officials if it chooses to do so.
> Given modern caseload burdens, one of the paramount considerations
> in deciding whether to accept such an invitation will be the difficulty of
> the Eleventh Amendment issues compared to the merits issues. *See*
> *Parella*, 173 F.3d at 56 ("[A]voiding Eleventh Amendment questions
> where there are other dispositive issues ... permits courts to avoid
> squandering judicial resources.").

*McClendon*, 261 F.3d at 1259 (emphasis added); *Selensky v. Alabama*, 619 F. App'x

846, 849 (11th Cir. 2015) (affirming *sua sponte* dismissal on Eleventh Amendment

grounds).

Despite Wade's failure to raise the issue in his briefs[5], the Court deems it

appropriate to examine the Eleventh Amendment issues in this case.

> **(1)    The *Ex Parte Young* Exception to Eleventh**
> **Amendment Immunity Allows a Claim for**
> **Prospective Relief To End Continuing Violations**

---

[5] At oral argument, counsel for Wade and Amerson agreed that there was an Eleventh
Amendment issue which they did not raise.  (Doc. 24 at 5 ("There are different legal doctrines.
You might plug some of our arguments in. Sovereign immunity is certainly one of them."); at 6
("[W]e do not disagree with Your Honor's sovereign immunity. [sic] And it being a jurisdictional
matter, of course, the court is always free to take up sovereign immunity."); at 6 ("It was not our
intent to waive sovereign immunity or any other defense.")).

**of Federal Law**

As noted previously, Count One seeks <u>only</u> equitable relief in the form of "[a]n appropriate hearing to protect 3D-LIQ's procedural due process rights under the Fourteenth Amendment <u>before [Wade] further interferes with its rights</u>." (Doc. 14 at 14) (emphasis added) (alterations added).  The Eleventh Circuit has noted that

> [p]ursuant to the exception established in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), official-capacity suits against state officials are permissible, however, under the Eleventh Amendment when the plaintiff seeks "*prospective* equitable relief to end continuing violations of federal law." *See* [*Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999)] (emphasis in original).

*Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (alterations added; italics in original).

In *Summit Medical*, the Eleventh Circuit discussed the *Young* exception in some depth saying:

> The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. *See Ex parte Young*, 209 U.S. at 158–59, 28 S.Ct. 441. Because the enforcement of "an unconstitutional statute is void, and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States,' " the Supreme Court has held that the officer is not entitled to protection by the state's sovereign immunity. *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (*quoting Ex parte Young*, 209 U.S. at 160, 28 S.Ct. 441); *see also Coeur d'Alene*, 521 U.S. at 288, 117 S.Ct. 2028 (O'Connor, J., concurring) ("The *Young* doctrine recognizes that if a state official violates federal

13

law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity."). This doctrine has, therefore, been described as a legal "fiction" because it creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution. *See Pennhurst*, 465 U.S. at 114 n. 25, 104 S.Ct. 900.

<u>Thus, the availability of this doctrine turns, in the first place, on whether the plaintiff seeks retrospective or prospective relief.</u> As the Supreme Court has explained:

> *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."

*Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (*quoting Green*, 474 U.S. at 68, 106 S.Ct. 423). <u>Therefore, the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief</u>, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief. *See Green*, 474 U.S. at 68, 106 S.Ct. 423. If the prospective relief sought is the functional equivalent of money damages, however, i.e., "[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty," *Ex parte Young* does not apply.

*Edelman*, 415 U.S. at 669, 94 S.Ct. 1347.

> Because of the important interests of federalism and state sovereignty implicated by *Ex parte Young*, however, the doctrine is not without limitations . . .. [For example,] the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. *See Papasan*, 478 U.S. at 277–78, 106 S.Ct. 2932; *Green*, 474 U.S. at 68, 106 S.Ct. 423. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. *See Papasan*, 478 U.S. at 277–78, 106 S.Ct. 2932. This requirement protects states by setting "a minimum threshold for abrogating a state's constitutional immunity." *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir.1997), *cert. denied*, 524 U.S. 905, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998). [Also,] in *Idaho v. Coeur d'Alene Tribe*, the Supreme Court recently said that the *Ex parte Young* doctrine does not apply where the equitable relief sought "implicates special sovereignty interests." 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Thus, if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred by the Eleventh Amendment.

*Summit Medical*, 180 F.3d at 1336–37 (emphasis added).  In *Summit*, the Eleventh Circuit also held that "where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." *Id.* at 1338 (emphasis added).  The Court wrote:

> Here, Appellees unquestionably seek prospective relief—a declaratory judgment that the partial-birth and post-viability abortion statutes are unconstitutional. Although Appellants have not yet initiated prosecution, nor have they specifically threatened Appellees with prosecution, Appellants do intend to prosecute violators of both statutes, at least in cases where the fetus is viable. Moreover, as Appellants concede, the Attorney General could withdraw the enforcement directive and prosecute partial-birth abortions pre-viability. Given the severity of the potential penalties—up to ten years for the partial-birth abortion

statute and up to ninety-nine years for the post-viability abortion statute—Appellees would not have to be very risk averse to avoid any arguably proscribed conduct that may come within the reach of these statutes. In short, Appellees have sufficiently alleged an ongoing and continuous violation of federal law.

*Id.* at 1339-40; *see also*, Charles Alan Wright et al., 13D Fed. Prac. & Proc. § 3566, at 292 (3d ed. 2008) ("The best explanation of *Ex parte Young* and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are <u>threatening</u> to violate the federal Constitution and laws.") (emphasis added); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) ("The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."); *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996) ("[T]he *Young* exception permits relief against state officials only when there is an ongoing or threatened violation of federal law.").

### (2)   The Plaintiff Has Failed To Plausibly Allege An Ongoing Violation of Federal Law

The difference between a threat of unconstitutional action that is viable and one that is not, is illustrated in Judge Batten's opinion in *Cassells v. Hill*, No. 1:07-CV-2755-TCB, 2010 WL 4616573 (N.D. Ga. Nov. 8, 2010) (Batten, J.).  In *Cassells*, the plaintiff filed a Section 1983 action "challeng[ing] the constitutionality

of the Sheriff's Office rules and regulations regarding media releases and public criticism." *Cassells*, 2010 WL 4616573 at \*4.  The plaintiff, Cassells, a former sheriff's office employee, had been fired after making comments to the media regarding a current investigation into the Clayton County, Georgia Sheriff's Office. A new sheriff took office after Cassells was fired and immediately eliminated the rules which Cassells was alleged to have violated.  Judge Batten wrote:

> The situation here contrasts sharply with the situation in *Summit Medical*. When Cassells initiated this lawsuit on November 6, 2007, he alleged a violation of federal law that was ongoing. The Sheriff's Office's rules and regulations regarding media communication that Cassells challenges apparently were still applicable in 2007, even if no longer being enforced against Cassells. But when Kimbrough took office in January 2009, he removed the challenged provisions of the rules and regulations. Unlike the situation in *Summit Medical*, Cassells is not asking the Court to declare invalid an existing rule or a threatened action. Even assuming that the challenged rules were constitutionally invalid, they are no longer being applied to anyone, nor is there any threat at this time that they will be applied again. Under such circumstances, the requested injunction would be retrospective relief and is therefore barred by the Eleventh Amendment.

*Id.* at \*18.

In *Doe v. Annucci*, No. 14 CIV. 2953 PAE, 2015 WL 4393012 (S.D.N.Y. July 15, 2015) (Engelmayer, J.), appeal withdrawn (May 12, 2016), Judge Englemayer, in the Southern District of New York, also addressed this issue.  In *Annuci*, the Plaintiff, Doe, had been convicted of sexual offenses against a minor.  As noted by Judge

17

Englemayer,

> [a]fter Doe was released on parole, Doe's wife, Jane Doe, gave birth to
> a son, M .S. In the years that followed, the Department of Corrections
> and Community Supervision ("DOCCS") applied one of Doe's special
> parole conditions to bar him, during two distinct time periods, from
> having any contact with his infant son.

*Annucci*, 2015 WL 4393012, at *1.  The bar was in place at the time Doe filed his suit

in federal court asserting claims for violation of his substantive and procedural due

process rights, and right to free association.  Doe sought relief in the form of

> a declaration that the "restriction on John Doe's contact with M.S. was
> unconstitutional," a "permanent injunction barring enforcement of the
> challenged parole condition as applied to John Doe," monetary damages,
> and attorneys' fees and costs.

*Id.* at *4.  Before a judgment was entered, the DOCCS lifted the bar noting that while

its order

> "may result in possible reunification with his son in the marital
> household," . . . Doe was "[] still subject to the original condition of his
> release." Further, [the DOCCS] stated that the "decision does not
> preclude any future decision to bar [Doe's] contact with his son based
> on emerging issues, conditions or circumstances which would indicate
> to a parole officer that he is likely to or has sexually reoffended any
> child."

*Id.*  Thereafter, Doe's parole officer modified his parole conditions to "allow [ ]

unrestricted contact" between Doe and his minor children. *Id.*  Addressing Eleventh

Amendment immunity, Judge Engelmayer noted that "[the plaintiff's] claim for

injunctive relief . . . falls within the *Young* exception so long as the complaint alleges

an "ongoing violation of federal law." *Id.* at *16.  He continued:

> Here . . . the requested injunctive relief is prospective. It does not relate to conduct that occurred in the past. . . . Rather, anticipating the "threat of future enforcement," it aims to "prevent injury that will occur in the future." *Summit Med. Assocs.*, 180 F.3d at 1338.
>
> The Court therefore holds that [Doe] states a claim for an ongoing violation, such that, as pled, sovereign immunity does not bar Doe's claim for injunctive relief against Annucci.

*Id.* at *15–17.

In the instant case, the relief sought in Count One – a pre-seizure hearing

"before Amerson further interferes with [the Plaintiff's] rights" (doc. 14 at 11, ¶56)

– is prospective. The Plaintiff seeks injunctive relief to stop a <u>possible future</u>

<u>interference</u> with Plaintiff's aforementioned rights without a hearing beforehand.  The

Amended Complaint alleges

> 42.  [Wade] has caused the charitable bingo operation to close, and <u>[Wade] continues to threaten another raid and seizure of equipment if the operation is reopened</u>.
>
> 43.  [Wade] has resorted to in terrorem tactics to prevent 3D-LIQ from continuing to supply equipment, services, and the property to allow for the operation of a charitable bingo operation <u>by threatening individuals associated with 3D-LIQ with criminal prosecution should the charitable bingo operation resume</u>.

(Doc. 14 at 9) (emphasis added).  However, the Plaintiff's allegations of "threats" are

supported nowhere in the Amended Complaint with <u>facts</u>.  The Plaintiff never states when such threats were made, whether they were made by the Sheriff himself of someone in his department, and to whom the threats were made.  The allegations are mere "labels or conclusions" and "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 557.  Thus, the Plaintiff has failed to <u>plausibly</u> allege an ongoing violation.  *See, Duke v. Hamil*, 997 F. Supp. 2d 1291, 1298 (N.D. Ga. 2014) ("Other than alleging that 'Defendants' actions ... have a chilling effect upon expression in general,' (Compl., Dkt. [1] ¶ 30), Plaintiff alleges no specific facts to show that Defendant Hamil has been suppressing the speech of his employees. Simply alleging that Plaintiff's demotion has chilled others' First Amendment rights fails to show a plausible constitutional violation, let alone one that is ongoing, and thus *Ex parte Young* is inapplicable.");  *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (allegations which contain no plausible threat of future violations do not fall within the *Young* exception to Eleventh Amendment immunity); *Cmty. Mental Health Servs. of Belmont, Harrison & Monroe Ctys., Ohio v. Mental Health & Recovery Bd. of Belmont, Harrison & Monroe Ctys.,* 395 F. Supp. 2d 644, 651 (S.D. Ohio 2004) (Frost, J.)*, aff'd sub nom. Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Ctys.,* 150 F. App'x 389 (6th Cir. 2005) ("[P]laintiff claims that Defendants Hayes and Hogan have

'threatened to press forward with their unlawful taking of plaintiff's funds and unlawful investigation' (Pl.'s Mem. Opp'n. at 11) but plaintiff has not alleged any specific facts to support this contention.").

Because the Plaintiff has failed to plausibly allege "a threat of future enforcement that may be remedied by prospective relief" *Summit Medical*, 180 F.3d at 1338, it has failed to allege a continuing violation of federal law, and the *Ex Parte Young* exception to Eleventh Amendment immunity does not apply. Count One is thus due to be dismissed as against Wade, who is sued in his official capacity only.[6] However, since the Court raised this issue *sua sponte*, it will allow the Plaintiff to amend its complaint again to plausibly allege a threat of future enforcement, if it can do so.

### b.    The Right to a Pre-Seizure Hearing

Since the Court has determined that Count One, as pled against Wade, is insufficient, there is no need at this time to determine whether the Plaintiff would have a right to a preseizure hearing. However, in the event that the Plaintiff amends to plausibly allege a threat of future enforcement, and the Defendants respond with

---

[6] At oral argument, counsel for the Defendants referred to this as a "ripeness issue" saying "[t]here's no indication that this defendant is going to be conducting bingo operations in the future. There's no reason to suspect that they'll be in a situation where the sheriff would be in a position to seize equipment." (Doc. 24 at 7). However, counsel also acknowledged that if the Plaintiff alleged that they plan to resume operations, that would cure this issue. (Doc. 24 at 7).

another motion to dismiss, this issue will likely be before the Court again. Accordingly, the Court will set out its "observations" at this point in order to guide future briefing on this issue.

As noted previously, the Plaintiff contends that Wade violated its procedural due process rights guaranteed under the 14th Amendment of the United States Constitution. "In order to state a procedural due process claim under § 1983, [a plaintiff has] to allege a constitutionally inadequate process." *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012); *see also*, *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003) ("In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of ... constitutionally-inadequate process." (citing *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994))). In this case, the Plaintiff argues that Wade violated its right to procedural due process "when he raided the charitable bingo operation and seized [its] equipment without first giving notice and providing a hearing." (Doc. 10 at 5) (emphasis added).

In their initial brief, the Defendants only cite and discuss[7] *Lord Abbett Mun.*

_____

[7] In footnote 1 to their initial brief, the Defendants write:

*See also Novel Management, Inc. v. Woodward*, case no. CV 01-BU-1699-S, 2001 WL 1846798 (N.D. Ala. July 13, 2001); *Taylor v. Siegelman*, 230 F.Supp.2d 1284 (N.D. Ala. 2002); *Department of Texas Veterans of Foreign Wars of the United States v. Blake Dorning*, case no. 07-S-2144-NE, 2009 WL 8741821 (N.D. Ala. Sept. 28, 2009); *Set Free Community Development Corp. v. Bentley*, case no. 2:11-cv-1802-AKK (N.D. Ala.) (doc. 22, Memorandum Opinion dated Sept. 23,

*Income Fund, Inc. v. Tyson (Tyson)*, 671 F.3d 1203 (11th Cir. 2012), and an unpublished memorandum opinion from this Court, *Set Free Community Development Corp. v. Riley*, No. 2:10-CV-1769-VEH, doc. 39 (N.D. Ala.) (Hopkins, J.), for the proposition that a pre-seizure hearing is not required.  However, neither of those cases dealt with the situation present here, where the appropriate regulatory and permitting authorities, the Commission and the city, <u>have expressly decided that the conduct in question was legal.</u>  There is no evidence, or allegation, that the Commission or the city changed their minds, or revoked the applicable permits.  The Defendant has cited no cases which stand for the proposition that the sheriff can overrule the commission because the sheriff decides that the commission's decision to issue the permit was invalid.[8]  Any future briefing should address these issues.[9]

_____

2011)[.]

(Doc. 9 at 5, n. 1).  The Defendants do not discuss these cases further.  However, the Court notes that these cases also fail to address the situation presented in the instant case.

[8] The Court is concerned that the instant case might be more akin to the scenario where a group is given a permit to conduct a parade down a major city street.  While blocking the street is ordinarily illegal, once a permit is issued could law enforcement shut the parade down, without notice and the right to be heard, on its <u>belief</u> that the permit was improperly granted?  Or, would it have to seek to have the permit invalidated by the courts?   Similarly, can law enforcement stop permitted construction projects under the theory that building permits, which on their face appear valid, were not validly issued?  Can it shut down a bar because it believes that the establishment's liquor license, again appearing valid on its face, was in fact invalidly issued?

[9]  The Court notes that the Defendants argue for dismissal of Counts One, Two, and Three by lumping all three Counts together, in less than two pages of their brief, without regard to the relief requested in each or the Defendants sued.  Any future briefing should correct this error.

### B.   Count Two – Injunctive Relief

1.   *Overview of the Count*

a.   **The Count Is Brought Against Wade, in his Official Capacity as Sheriff, and Amerson, Individually**

Like Count One, Count Two is not clear.  For the same reasons stated in this Court's discussion of Count One, the Court assumes that this count is brought against Wade in his official capacity and against Amerson in his individual capacity.

b.   **The Count Seeks Only Injunctive Relief**

Count Two seeks the following relief:

62.   3D-LIQ should be granted preliminary and permanent injunctive relief prohibiting Amerson and those acting in concert or cooperation with him from removing any bingo-related equipment owned by 3D-LIQ without first providing the required notice and hearing.

63.   3D-LIQ should be granted preliminary and permanent injunctive relief requiring Amerson and those acting in concert or cooperation with him to return all of the bingo-related equipment seized on July 22, 2016.

(Doc. 14 at 12).

c.   **The Count Alleges No Specific Deprivation of Rights**

Unlike Count One, Count Two alleges no specific violation of a right secured by the Constitution and laws of the United States, and does not allege that the alleged deprivation was committed by a person acting under color of state law.  Indeed, Count Two alleges no cause of action at all.  Instead, Count Two merely "re-alleges

and incorporates by reference the allegations contained in the preceding paragraphs."

(Doc. 14 at 11, ¶57).  The count then pleads the general requirements for injunctive

relief (*i.e.* "irreparable injury," "no adequate remedy at law," etc.).

> As noted by the Eleventh Circuit

> > any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. "There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim)." *Klay v. United Healthgroup, Inc*. 376 F.3d 1092, 1097 (11th Cir.2004). An injunction is a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Id.* at 1098.

*Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005).

Because the Plaintiff failed to allege any cause of action in Count Two, that count is

due to be dismissed.[10]

## C.   Count  Three–Declaratory Judgment

This count arises under the Federal Declaratory Judgment Act, 28 U.S.C. §

---

[10]  Even if the Court treated Count Two  as merely another claim for relief for the Section 1983 claim stated in Count One, it would still be dismissed as to Wade.  For the same reasons set out in this Court's discussion of Count One, the claim in paragraph 63, which seeks only retrospective relief, fails because it is barred by the Eleventh Amendment. The claim in paragraph 62, to the extent it is based on "threats" of future seizures, is not plausible because it lacks factual support. As to Amerson, Count Two is due to be dismissed for the same reasons stated in this Court's discussion of Count One–because Amerson cannot grant the relief requested.

2201. Like Counts One and Two, Count Three is not clear. For the same reasons stated in this Court's discussion of Counts One and Two, the Court assumes that this count is brought against Wade in his official capacity and against Amerson in his individual capacity.

In Count Three, the Plaintiff alleges:

67.     3D-LIQ is entitled to a judgment from this Court declaring that:

(a)     Sable lawfully opened and lawfully operated the subject charitable bingo operation; and

(b)     Amerson improperly raided Sable's charitable bingo operation and improperly seized the bingo-related equipment owned by 3D-LIQ on July 22, 2016; and

(c)     3D-LIQ was entitled to notice and a hearing prior to the raid and the seizure of the bingo-related equipment on July 22, 2016.

(Doc. 14 at 13).  "The Eleventh Amendment precludes the plaintiff from obtaining retrospective declaratory . . . relief[.]"  *Students for Life USA v. Waldrop*, 90 F. Supp. 3d 1265, 1275 (S.D. Ala. 2015) (Steele, J.); *see also*, *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (the Eleventh Amendment bars a claim for declaratory relief when the issuance of such a judgment would have had "much the same effect as a full-fledged award of damages or restitution by the federal court"); *Summit Medical Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir.1999) ("a

26

plaintiff may not use the [*Ex parte Young* ] doctrine to adjudicate the legality of past conduct"); *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1258 (M.D. Ala. 2007) ("*Ex parte Young* . . . does not apply when the declaratory relief pertains only to past violations of federal law.") (citing *Green* and *Summit*).  All of the relief requested in this Count is retrospective.  Accordingly, as to Wade, Eleventh Amendment Immunity bars this claim.

Additionally, for the same reasons stated in this Court's discussion of Count One, Count  Three will be dismissed as to Amerson.

### D.   <u>Count IV–Damages and Qualified Immunity</u>

This claim is brought only against Amerson.  (Doc. 14 at 13, ¶13).  Amerson argues that he is protected by qualified immunity.

> Qualified immunity protects government officials sued in their individual capacities from liability for acting within the scope of their discretionary authority where their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation marks omitted). The immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id. (quotation marks omitted).

*Etherton v. City of Rainsville*, No. 15-15147, 2016 WL 5349206, at *5 (11th Cir. Sept. 26, 2016).  As noted by this Court:

> Until 2009, the Supreme Court required a two-part inquiry to determine the applicability of qualified immunity, as established by

27

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L.Ed. 2d 272 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L.Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the defendant would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting Saucier, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L.Ed. 2d 271 (1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed his actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L.Ed. 2d 583 (2004) ("If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d

28

1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L.Ed. 2d 565 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L.Ed. 2d 589 (1991).Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L.Ed. 2d 271 (1986).

*Pressley v. City of Anniston & Daryl Abernathy*, No. 1:14-CV-1029-VEH, 2016 WL 4679135, at *16–17 (N.D. Ala. Sept. 7, 2016).

The Plaintiff argues that Amerson violated its right to a pre-seizure hearing and that that right was clearly established. (Doc. 10 at 16, and n. 8).[11]   The Court has

---

[11]   During the hearing, the Plaintiff argued that the issue of whether this law was "clearly established" was not raised by Amerson. (Doc. 24 at 38). However, it was raised by the <u>Plaintiff</u> in its brief. (*See*, doc. 10 at 16, n. 8 ("Plaintiffs' constitutional rights were violated when

reviewed the parties' briefs on that issue, and has done its own research, and determines that, at the very least, it was not <u>clearly established</u> that the Plaintiff was entitled to such a hearing.  *See*, *Lord Abbett Mun. Income Fund, Inc. v. Tyson (Tyson)*, 671 F.3d 1203 (11th Cir. 2012); *Set Free Community Development Corp. v. Riley*, No. 2:10-CV-1769-VEH, doc. 39 (N.D. Ala.) (Hopkins, J.).; *Novel Management, Inc. v. Woodward*, case no. CV 01-BU-1699-S, 2001 WL 1846798 (N.D. Ala. July 13, 2001); *Set Free Community Development Corp. v. Bentley*, case no. 2:11-cv-1802-AKK (N.D. Ala.).

Regardless, in this case the parties agree that Amerson obtained a warrant prior to seizing the property, and there has been no attack on the validity of that warrant. "Where an arrest warrant was facially valid and was executed in good faith and with probable cause, officers are entitled to qualified immunity." *Rodriguez v. Brown,* No. 1:13–CV–03633–RWS, 2014 WL 2809002, at *4 (N.D. Ga. June 20, 2014) (citing *Fullman v. Graddick,* 739 F.2d 553, 561 (11th Cir.1984) (qualified immunity appropriate for sheriff who acted pursuant to facially valid search and arrest warrants and uncontroverted evidence showed that said warrants were executed in good faith and with probable cause)); *Willis v. Arp*, 165 F. Supp. 3d 1357, 1362 (N.D. Ga.

---

Amerson failed to provide pre-seizure notice and a hearing and such a right was clearly established in this case.")).

2016) ("[I]f the arrest warrant was facially valid, [the officer] is entitled to qualified immunity.").

The Plaintiff cites to the following cases as examples where a "court has . . . found a Fourteenth Amendment violation where police officers were operating under a warrant:" *United States v. James Daniel Good Real Prop. (Good)*, 510 U.S. 43, 52, 114 S. Ct. 492, 500 (1993); *Cochran v. Folger*, 740 F. Supp. 2d 923, 928, 934 (E.D. Ky. 2010); and *Leslie Tobin Imports, Inc. v. Rizzo*, 305 F. Supp. 1135, 1140 (E.D. Pa. 1969). *Good* does not discuss qualified immunity at all, much less in the context of a facially valid warrant.[12] Neither does *Rizzo*. *Cochran* and *Rizzo* are non-binding district court opinions from outside the Eleventh Circuit. Accordingly, they do not consider the Eleventh Circuit precedent cited above. Further, in *Cochran* the warrant was deficient on its face. *See, Cochran v. Folger*, 740 F. Supp. 2d 923, 936 (E.D. Ky. 2010), *aff'd in part sub nom. Cochran v. Gilliam*, 656 F.3d 300 (6th Cir. 2011) ("Any deputy sheriff familiar with the facts and procedures necessary for the seizure of property in the context of an eviction or the enforcement of a judgment would have realized that the proper procedures were not followed. At the very least, it should have been apparent to a reasonable deputy sheriff that no amount owed was specified

---

[12] At the hearing, Plaintiff's counsel admitted that *Good* was not a qualified immunity case. (*See*, doc. 24 at 37) ("Was the *Daniel Good* case a qualified immunity case?" MS. SIPES: No, Your Honor.").

in the warrant. In fact, the Warrant for Possession was silent as to any award of fees, costs or rent and did not mention personal property at all. Under such circumstances, a reasonable person in the deputy sheriff's position would have or should have known that Cochran's due process rights were being violated."). No such allegation has been made in this case. Because Amerson acted pursuant to a warrant, whose validity has not been attacked, he is entitled to qualified immunity.

## IV.   CONCLUSION

For the reasons stated herein, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1.   The Defendants' motion to dismiss is **GRANTED**.

2.   All claims asserted in the Amended Complaint against Amerson are hereby **DISMISSED with prejudice**.

3.   All claims asserted in the Amended Complaint against Wade are **DISMISSED without prejudice**.  No later than March 16, 2017, the Plaintiff may amend its complaint again to correct the deficiencies set out in this opinion.

**DONE** and **ORDERED** this 24th day of February, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge